Coos,
No. *5039*.

MILAN *v.* BERLIN AND BERLIN AIRPORT AUTHORITY.

Argued October 2, 1962.

Decided November 30, 1962.

*John E. Gormley* (by brief and orally), for the plaintiff.

*Arthur J. Bergeron,* city solicitor (by brief and orally), for the defendants.

DUNCAN, J. Certain facts were established by agreement of the parties. On April 16, 1941 the city of Berlin instituted eminent domain proceedings to acquire the land in question by petition pursuant to statute. Laws 1929, c. 182, as amended by Laws 1931, c. 60. Cf. RSA 423:1-5. The taking was authorized by order dated July 16, 1941. In the meantime what is now RSA 423:9 was adopted, effective on May 20, 1941. Laws 1941, c. 117. This statute provides in part as follows: "All property and rights acquired by a city or town outside its boundaries, as provided in sections 1 to 4, inclusive, or as provided in any other statute relative to aeronautical facilities hereinbefore or hereinafter enacted, if said property and rights are not leased for profit, shall be exempt from taxation therein; but the city or town shall make payments, on or before the first day of December in each year, to each city or town in which such property or rights are located, of such sums as would have been assessed against said property and rights if the same had been included in the tax invoice for such year at the tax valuation of the same on April 1, 1940." RSA 423:9.

It is agreed that the city of Berlin made annual payments to the town of Milan from 1941 through 1957 which "were the equivalent of those required by" RSA 423:9, *supra.*

In 1953 the Legislature adopted what is now RSA 423:10, Laws 1953, c. 194. This section provides: "ACQUISITION BY STATE. Whenever the state shall acquire any airport, aircraft landing

area, or other aeronautical facility which has been owned by one municipality in another municipality upon which the former has made payments pursuant to section 9, next above, then the state shall continue to make payment in the same manner to the municipality in which such facility lies as was made by the municipality from which the state acquired it."

In 1957 the Legislature enacted Laws 1957, c. 433, creating the defendant Airport Authority and authorizing it to acquire by eminent domain or otherwise "the Berlin Municipal Airport in the town of Milan." *Id., s.* 7. The act provided by section 11: "All property and rights acquired by the authority in the town of Milan shall be exempt from all taxation. All property of the authority shall be exempt from attachment, and all of its real property shall be exempt from levy and sale by virtue of any execution."

By quitclaim deed of the city of Berlin dated March 30, 1960 the Berlin Airport Authority acquired title to the airport in Milan.

The principal issue presented is whether either defendant is liable to the plaintiff for payments in lieu of taxes for the years 1960 and 1961, under the provisions of the general statute found in RSA 423:9, 10. We agree with the defendants that the first three questions transferred by the Trial Court are now moot, since the city has made payments to the plaintiff for 1958 and 1959, following hearing in another action to recover them, in which the city was sole defendant.

Since title to the airport was held by the defendant Authority on April 1, 1960, the defendant city can be under no liability to make the payments imposed by RSA 423:9, unless in legal contemplation the airport remained the property of the city, despite vesting of title in a distinct corporation especially created to acquire and maintain the airport as well as "auxiliary landing places" elsewhere in the county. Laws 1957, 433:7. The Authority, like other agencies of similar character which have been established for particular governmental purposes with increasing frequency in recent years (see Annot. 161 A.L.R. 733, 754), may be regarded as a "quasi-municipal corporation." Strictly speaking, it is not a municipal corporation, because "lacking many of the powers commonly and necessarily characteristic of municipal corporations." 1 McQuillin, Municipal Corporations (3d *ed.*) *s.* 2.28. See also, 3 *Id., s.* 11.03. Although as the plaintiff points out, the membership of the Authority consists

in major part, *ex officio*, of elected officials of the city (Laws 1957, 433:2) and its power to "encumber" its real estate is made dependent upon "the sanction of the city of Berlin" (*Id., s.* 10), it is not for that reason to be subordinated to the position of a mere instrumentality of the city, or of its *alter ego* for limited purposes.

Since the Authority was to acquire an airport originally established by the city, it was logical that the Legislature should recognize the city's interests by establishing the limitation upon encumbrance of the property. Logically also, the Legislature recognized the interest of the county and of the plaintiff town, by giving each a voice in the Authority's affairs. Laws 1957, 433:2.

At the same time, however, it provided that the Authority should have "no power to commit the State or any of its political subdivisions to any obligation or liability whatsoever . . . ." *Id., s.* 10. Its authority as a separate body politic consisted of various enumerated powers, exercisable wholly without reference to any sanction by the city. *Id., s.* 9. In our judgment, the Authority is an entity distinct from the city of Berlin, and cannot be deemed a "city" within the meaning of RSA 423:9, so as to be liable under that section for the payments sought to be recovered in this action. See RSA 21:2, 5.

The plaintiff's brief candidly recognizes that the defendant city "would be released from liability . . . unless the Authority was, in reality, an agency of, and the equivalent of, the City"; and we consider that it is not. The plaintiff urges however, that the Authority is an agency of the State, and that it has been recognized as such by the Justices of this court in *Opinion of the Justices,* 101 N. H. 546, 548. From this it argues that the State has in effect "acquired" an airport formerly owned by a city which made annual payments to the town, and that the Authority, as an agency of the State is therefore liable to "continue to make" the annual payments to the plaintiff in accordance with RSA 423:10, *supra.* *St. Regis Co.* v. *Board,* 92 N. H. 164.

While this argument has appeal, we do not believe it to be sound. The Legislature which first enacted the general provisions found in RSA 423:9, 10, also enacted the Aeronautics Act of 1941 (Laws 1941, *c.* 199), and the "Model Airport Zoning Act." Laws 1941, *c.* 145, *s.* 11. It likewise created the Laconia Airport Authority for the purpose of acquiring an airport in the town

of Gilford. Laws 1941, c. 272, s. 7. Yet this act contained no provision requiring payments in lieu of taxes to the town. The Berlin Airport Authority created by Laws 1957, chapter 433 is closely analogous to this and other airport authorities which have been created throughout the state.

In 1945, the Dover, Somersworth and Rochester Airport Authority was created (Laws 1945, c. 281); in 1959, the Lebanon Regional Airport Authority (Laws 1959, c. 415); and in 1961 the Nashua Airport Authority. Laws 1961, c. 343. All of these airport authorities were constituted under legislation closely resembling the Berlin Airport Authority enabling act. The consistent pattern thus exhibited, with its repeated assertion that the operation and maintenance of the airports involved are "for public purposes as an aid to national and state defense and for the convenience of the public" as well as a "governmental function," warrant description of the authorities concerned as agencies of the State, rather than mere instrumentalities of the municipalities involved. *Opinion of the Justices,* 101 N. H. 546, *supra.* See Annot. 66 A.L.R. 2d 634.

On the other hand, we think that they are not to be regarded as agencies of the State in the sense that the Water Resources Board was said to be such an agency in *St. Regis Co.* v. *Board, supra,* relied upon by the plaintiff. The statute establishing that Board expressly created it "as an agency of the state" (Laws 1935, c. 121, s. 3). It granted it power to acquire property "in the name of the state" (s. 3 III) with title to "be vested in the state" (Laws 1937, c. 118, s. 6 VI). State appropriations were made for its use, and its credit was guaranteed by the State. Laws 1935, c. 121, ss. 17, 18. Provisions such as these doubtless prompted the statement of the court that the Board's "status as a separate entity is only an illusory one." *St. Regis Co.* v. *Board,* 92 N. H. 164, 167, *supra.*

The provisions of the act creating the Water Resources Board contrast sharply with those of the Airport Authority enabling acts. Thus section 10 of the Berlin Airport Authority act contains the uniform provision that it shall "have no power to commit the state . . . to any obligation or liability." Laws 1957, 433:10. Similarly each of these acts provides that property of the authority created shall be exempt from "all taxation," and in the case of the recent Nashua Airport Authority from "all . . . special assessments," as well. Laws 1961, 343:11. See *Opinion of the*

*Justices,* 95 N. H. 548. Nor are such exemptions contingent upon nonexercise of granted powers to lease the airport facilities. *Cf.* RSA 423:9, *supra.* In enacting these exemption provisions the Legislature could not have been unaware of other statutory tax exemptions of long standing relating to water supplies which have been coupled with the requirement of annual payments in lieu of taxes. See RSA 72:11; *Keene* v. *Roxbury,* 96 N. H. 233; 97 N. H. 82; *Manchester* v. *Auburn,* 102 N. H. 325. See also, RSA 481:14; RSA 219:32. Yet the Legislature has imposed no such requirement in granting exemptions to airport authorities.

Hence while such airport authorities are governmental agencies in a broad sense, because engaged in governmental functions of benefit not only locally but also throughout the State and nationally, they are not agents or instrumentalities of the State, in the sense that the Water Resources Board and the Liquor Commission are. See *State* v. *Ellard,* 95 N. H. 217, 220. In our judgment the acquisition of property by the Berlin Airport Authority was not acquisition by the State, within the meaning of RSA 423:10. See Lindahl, "Air Transportation in New Hampshire," Small Business Management Research Reports (1961), *pp.* 52-56.

As early as 1939 the State was authorized to acquire and operate "any air navigation facility." Laws 1939, *c.* 224, *s.* 8. RSA 422:16. We think that it was to such acquisition by the State, in its own name and behalf, that the 1953 enactment, now RSA 423:10, was intended to apply; and that the special act creating the Berlin Airport Authority was intended to be effective independently of the general provisions of RSA 423:9 and 10. See *Welch* v. *Read,* 100 N. H. 174.

In answer to the fourth question transferred, we hold that the defendant city was under no obligation after March 30, 1960 to make the payments provided for by the general statute, RSA 423:9. In answer to the fifth question, we hold that the defendant Authority was under no obligation, after the same date, to make payments to the plaintiff on account of the airport by reason of RSA 423:10, or otherwise; and that it is exempt from taxation thereon by reason of Laws 1957, 433:11, *supra.*

*Remanded.*

KENISON, C. J., did not sit; the others concurred.